1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| RUBEN M. BARRETT, an individual, | CASE NO. 14cv2976 DMS (WVG) |

Plaintiff,

11

vs.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

12

13

JPMORGAN CHASE BANK, a New York corporation, et al.,

14

Defendants.

15

16       This case comes before the Court on Defendant JP Morgan Chase Bank, N.A.'s

17  motion to dismiss Plaintiff's Complaint.  Plaintiff filed an opposition to the motion, and

18  Defendant filed a reply.  For the reasons set out below, the Court grants in part and

19  denies in part Defendant's motion.

20                                                **I.**

21                                       **BACKGROUND**

22       In May 2012, Plaintiff Ruben M. Barrett entered into an investment agreement

23  with SSMG, Inc.  (Compl. ¶ 6.)  It appears the agreement required Plaintiff to provide

24  $150,000 to SSMG to be placed towards an off-shore oil investment.  (*Id.*)  Plaintiff

25  was to send his investment to the client trust account of Arizona attorney Larry Busch

26  of the Larry Busch Law Center, where the monies would be held in escrow subject to

27  their release to the entity making the actual purchase.  (*Id.*)  SSMG was serving as an

28  / / /

intermediary, allegedly combining Plaintiff's money with other investments to accumulate a total of $750,000. (*Id.*) SSMG would then be the name on the investment prior to its release to the actual buyer of the fuel, Nacim Energy, LLC. (*Id.*)

On or about May 8, 2012, Plaintiff went to his local Chase bank located in Hillcrest, California. (*Id.* ¶ 7.) Plaintiff informed a Chase representative that he wished to execute a wire transfer. (*Id.*) Plaintiff was led to a private desk where he was assisted by a single Chase employee. (*Id.*)

Plaintiff informed the employee that he wished to execute the transfer and provided him with specific wiring instructions. (*Id.* ¶ 8.) Plaintiff alleges he informed the employee he would need pre-advice to be sent to Busch to confirm the transaction was executed properly. (*Id.*) Plaintiff alleges he specifically requested pre-advice in the following form: "Pre-Advice payment and Transaction Codes Must Be Sent to Larry@Buschlawcenter.Com Please call 6238261995 To Notify That Wire Has Sent." (*Id.*)

Plaintiff alleges the employee then left the desk for several minutes before returning and informing Plaintiff that the pre-advice had been sent, and that the transaction had been successful. (*Id.* ¶ 10.)

Plaintiff alleges that within a matter of days, it became clear to him that things were not moving as planned. (*Id.* ¶ 11.) He contacted SSMG in an attempt to recover his funds, but those attempts were unsuccessful. (*Id.*) He also contacted Busch and demanded return of the funds. (*Id.*) Busch informed him that the funds had been released pursuant to an escrow agreement between him, SSMG and a Colorado corporation entitled FRUCOM CAPITAL. (*Id.*) Busch informed Plaintiff that he had never heard of him, and told Plaintiff he was under the impression the funds were coming directly from SSMG and were to go directly to FRUCOM. (*Id.* ¶ 11.)

Immediately after the transfer and on several occasions over the following years, Plaintiff spoke with Chase representatives about the transfer. (*Id.* ¶ 12.) Plaintiff / / /

alleges the Chase representatives repeatedly reassured Plaintiff that pre-advice had been issued to Busch.  (*Id.*)

In the months following the transfer, Plaintiff learned that he was the victim of a scam and had been defrauded out of $150,000 by SSMG and FRUCOM.  (*Id.* ¶ 13.) Plaintiff notified federal law enforcement authorities and law enforcement in California and Arizona about the scam, but he was unable to secure a return of his funds.  (*Id.*)

At some time in 2013, Plaintiff was informed by a Chase representative that he could request a recall of the May 2012 wire transfer, which Plaintiff did.  (*Id.* ¶ 14.) Chase denied Plaintiff's request on October 25, 2013.  (*Id.* ¶ 15.)

In November 2013, Plaintiff filed a complaint against Chase with the Consumer Financial Protection Bureau ("CFPB") regarding its refusal to recall the wire transfer. (*Id.* ¶ 16.)  In response to the claim and in its defense, Chase sent a letter to the CFPB stating it did not perform the pre-advice instruction as Plaintiff requested.  (*Id.*)  Shortly after receiving this letter, the CFPB closed Plaintiff's claim.  (*Id.* ¶ 18.)

On November 13, 2014, Plaintiff filed the present case against Chase in San Diego Superior Court alleging claims for professional negligence, negligent misrepresentation, and two claims for fraud.  Chase removed the case to this Court on December 19, 2014, on the ground of diversity jurisdiction.  The present motion followed.

## II.

## DISCUSSION

Defendant Chase moves to dismiss the Complaint in its entirety.  It argues Plaintiff's first three claims are foreclosed by the California Uniform Commercial Code, and Plaintiff's fourth claim is legally incognizable.  Plaintiff has agreed to dismiss his fourth claim, therefore the Court will address only the first three claims for relief.

/ / /

/ / /

**A.    Standard of Review**

14cv2976

1      In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*,

2  550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review

3  for 12(b)(6) motions.  To survive a motion to dismiss under this new standard, "a

4  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

5  relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

6  at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that

7  allows the court to draw the reasonable inference that the defendant is liable for the

8  misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

9      "Determining whether a complaint states a plausible claim for relief will ... be a

10 context-specific task that requires the reviewing court to draw on its judicial experience

11 and common sense."  *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.

12 2007)).  In *Iqbal*, the Court began this task "by identifying the allegations in the

13 complaint that are not entitled to the assumption of truth."  *Id.* at 680. It then considered

14 "the factual allegations in respondent's complaint to determine if they plausibly suggest

15 an entitlement to relief."  *Id.* at 681.

16 **B.    California Uniform Commercial Code**

17     Defendant argues Plaintiff's first three claims for relief are barred by the

18 California Uniform Commercial Code.  The California Supreme Court has stated "[t]he

19 California Uniform Commercial Code does not automatically displace all other legal

20 principles."  *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251 (2007).  Other legal

21 principles will apply "unless some particular provisions of the California Uniform

22 Commercial Code have displaced them."  *Id.*[1]

23 

24     [1] Defendant relies heavily on *Zengen* in support of its motion.  Although there
25 are some similarities between the facts of *Zengen* and the facts of this case, there are
   also significant differences between the cases.  First and foremost, *Zengen* was decided
26 on a motion for summary judgment.  Presumably, the parties in that case had an
   opportunity to develop the facts underlying the claims, which has not occurred here.
27 Second, in *Zengen* there was no dispute "that the four transactions involved in this case
   were funds transfers and, accordingly, division 11 of the California Uniform
28 Commercial Code applies to them."  *Id.* at 249.  That is not the case here.  Indeed,
   Plaintiff specifically disputes that the transaction at issue here was a funds transfer
   under the Code, which is a prerequisite to finding that Plaintiff's claims should be

1    Here, Defendant relies on Division 11 of the Code, which applies to "funds

2 transfers defined in Section 11104."  Cal. Comm'l Code § 11102.  Section 11104

3 defines "funds transfers" as:

4       the series of transactions, beginning with the originator's payment order,
         made for the purpose of making payment to the beneficiary of the order.
5       The term includes any payment order issued by the originator's bank or an
         intermediary bank intended to carry out the originator's payment order.
6       A funds transfer is completed by acceptance by the beneficiary's bank of
         a payment order for the benefit of the beneficiary of the originator's
7       payment order.

8 Cal. Comm'l Code § 11104(a).  Defendant argues the wire transfer at issue in this case

9 constitutes a funds transfer under the Code, therefore the Code displaces Plaintiff's

10 common law claims.  Plaintiff disagrees, for two primary reasons.

11    First, Plaintiff asserts the transaction at issue here does not fall within the

12 definition of a "payment order."  The Code defines a "payment order" as:

13      an instruction of a sender to a receiving bank, transmitted orally,
         electronically, or in writing, to pay, or to cause another bank to pay, a
14      fixed or determinable amount of money to a beneficiary if all of the
         following apply:
15
         (i) The instruction does not state a condition to payment to the beneficiary
16      other than time of payment.

17      (ii) The receiving bank is to be reimbursed by debiting an account of, or
         otherwise receiving payment from, the sender.
18
         (iii) The instruction is transmitted by the sender directly to the receiving
19      bank or to an agent, funds-transfer system, or communication system for
         transmittal to the receiving bank.
20

21 Cal. Comm'l Code § 11103(a)(1).  Plaintiff argues the transaction at issue here did not

22 begin with a payment order because it included pre-advice instructions.  Defendant

23 responds that the pre-advice instructions did not state "a condition to payment to the

24 beneficiary," therefore the transaction did involve a payment order.

25 / / /

26

27

28
_____
displaced.  Thus, although the Court finds *Zengen* informative and important to the
issues raised in this case, it is not dispositive of this motion.

1   In the Complaint, Plaintiff alleges he provided the Chase employee "with specific
2   wiring instructions."  (Compl. ¶ 8.)  Those instructions required that payment and
3   transaction codes be sent to "Larry@Buschlawcenter.Com[.]" (*Id.*) They also required
4   that Chase call "6238261995 To Notify That Wire Has Sent." (*Id.*)  Based on these
5   allegations, it is unclear whether the pre-advice instructions stated "a condition to
6   payment to the beneficiary other than time of payment."  Without further information
7   about the pre-advice instructions, the Court cannot say whether this transaction
8   involved a "payment order," and thus whether it is governed by that portion of the
9   Code devoted to "funds transfers."
10   Defendant argues, in the alternative, that even if the pre-advice did place a
11   condition on payment to the beneficiary, the pre-advice was not followed, therefore the
12   payment was issued without any conditions.  In support of this argument, Defendant
13   relies on the Official Comment to the Uniform Commercial Code § 4A-104, which
14   discusses payment orders.  *See* U.C.C. § 4A-104, Official Comment ¶ 3.[2]  Noticeably,
15   Defendant omits a large portion of the Comment from its brief, and when the Comment
16   is read in its entirety, it does not support Defendant's position.  The Comment describes
17   a situation where the receiving bank places a condition on payment to the beneficiary
18   bank.  Under those circumstances, the Comment explains that the transaction is not
19   covered by Article 4A.  The Comment goes on to state that if the receiving bank "had
20   erroneously sent an instruction to the [beneficiary bank] unconditionally instructing
21   payment[,]" then the transaction would be covered by Article 4A, even though the
22   instruction was erroneous.  Defendant takes the example of an erroneous instruction and
23   argues that the same result applies if there is a condition on payment, but that condition
24   is not met.  However, the Comment does not speak to that situation.  Rather, it makes
25   clear that if there is a condition placed on payment to the beneficiary bank, the
26   transaction is not covered by Article 4A, whereas if payment is made unconditional,
27
28   [2]  The California Legislature enacted Article 4A of the Uniform Commercial Code as Division 11 of the California Commercial Code. *Zengen*, 41 Cal. 4th at 247.

even if that is in error, the transaction will be covered by Article 4A. The Comment says nothing about whether a transaction is covered by Article 4A if there is a condition on payment but that condition is not met. Accordingly, this argument does not demonstrate the transaction at issue in this case is covered by Article 4A. Absent such a showing, the Court declines to dismiss Plaintiff's claims on the ground they are displaced by the California Uniform Commercial Code.[3]

## III.

## CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part Defendant's motion to dismiss. Specifically, the Court grants Defendant's motion to dismiss Plaintiff's fourth claim for relief, and denies Defendant's motion to dismiss Plaintiff's other claims for relief.

**IT IS SO ORDERED**.

DATED: February 13, 2015

_____
HON. DANA M. SABRAW
United States District Judge

---

[3] Plaintiff raises another argument for why his claims are not displaced by the Code, namely that his claims are based on misconduct outside the wire transfer process. Specifically, Plaintiff asserts his claims are based on Defendant's repeated misrepresentations that it complied with his pre-advice instructions. In light of Defendant's failure to show that the wire transfer at issue here is covered by the Code, the Court need not reach this argument.

14cv2976