1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10   RUBEN M. BARRETT, an individual,       | CASE NO. 14cv2976 DMS (WVG)

11                              Plaintiff,   | **ORDER DENYING DEFENDANT'S**
                                             | **MOTION FOR SUMMARY**
12        vs.                                | **JUDGMENT AND GRANTING IN**
                                             | **PART AND DENYING IN PART**
13                                           | **DEFENDANT'S MOTION FOR**
     JP MORGAN CHASE BANK, a New             | **SUMMARY ADJUDICATION OF**
14   York corporation, et al.,               | **CLAIMS AND ISSUES**

15                              Defendants.  |

16        This case comes before the Court on the motion for summary judgment, or in the

17   alternative, for summary adjudication of claims and issues filed by Defendant JP

18   Morgan Chase Bank.  Plaintiff Ruben Barrett filed an opposition to the motion, and

19   Defendant filed a reply.  For the reasons set out below, the Court denies the motion for

20   summary judgment and grants in part and denies in part the motion for summary

21   adjudication of claims and issues.

22                                          **I.**

23                                    **BACKGROUND**

24        In May of 2012, Plaintiff Ruben Barrett, through a Hillcrest, San Diego branch

25   of Defendant, JP Morgan Chase Bank ("Chase"), transferred $150,000 to a client trust

26   account of a third-party attorney, Larry Busch, for the purpose of investing in an "off-

27   shore oil" investment deal.  (Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 15:8–12;

28   150:10–19; 153:11–18, Oct. 30, 2015).)  Plaintiff believed that within three weeks of

investing, he would gain profits of $2,250,000.  (*Id.* at 36:7–25.)  Instead, the deal turned out to be a scam.  (*Id.* at 46:1–12; 68:3–19.)  As a result, Plaintiff suffered economic loss of $150,000.  (*See id.* at 68:8–19.)

The deal called for Plaintiff to wire $150,000 to Busch who would hold this money in escrow and combine it with the monies of a third-party individual, Jamario Dyson, to reach a total of $750,000.  (*Id.* at 34:3–16; 105:14–23.)  Plaintiff was under the impression that Busch would then release the $750,000 to a third-party corporation, SSMG, Inc., who would facilitate the off-shore oil transaction.  (*See generally id.* at 29:10–32:25; 105:6 –106:3.)  Instead, upon receiving Plaintiff's $150,000, Busch sent $147,000 to a company called Westbridge Mutual, LLC and retained $3,000 as legal fees.  (Def.'s Evidentiary App'x, Ex. E (Busch Letter to Pl., July 9, 2012).)  Busch claims he acted pursuant to an escrow agreement sent to him by an individual named Michael Briscoe, who informed him that Plaintiff's $150,000 was really from SSMG, Inc. and instructed him to direct the money to Westbridge Mutual, LLC.  (Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 53:2–54:6); Ex. E (Busch Letter to Pl.).)  The escrow agreement sent by Briscoe to Busch listed Busch, Dyson, Briscoe, and Briscoe's company, Frucom Capital, as the only parties to the transaction and did not mention Plaintiff's involvement in the investment.  (Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 55:21–56:3); Ex. E (Busch Letter to Pl.).)

On May 7, 2012, Plaintiff visited his local Chase branch for the purpose of facilitating the $150,000 funds transfer and worked with a Chase representative, Alex Fava. (Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 151:1–10; 153:11–16).)  According to Plaintiff, prior to requesting the transfer, he asked Fava to "issue pre-advice" by way of calling Busch to inform him that the funds were being sent by Plaintiff and were to be used in furtherance of the off-shore oil investment with SSMG, Inc.  (*See id.* at 151:4–14.)  Plaintiff claims Fava agreed to perform the "pre-advice" and then left his desk for roughly forty-five minutes.  (*Id.* at 151:11–19.)  When Fava returned, Plaintiff asked whether he had gotten in touch with Busch to which he replied "yes."  (*Id.* at

183:1–25.) Relying on the representation that "pre-advice" had been "issued," Plaintiff signed the wire transfer request and permitted the funds to be transferred to Busch. (*See id.*)  Plaintiff testified he would not have agreed to send the funds unless he or a representative on his behalf communicated with Busch to confirm his knowledge of the transaction. (*Id.* at 23:4–23.)  Despite Plaintiff's own past failed attempts to connect with Busch,[1] he believed Fava was able to reach him. (*Id.*)

Plaintiff states that in the months following the May 7 transaction, he called Chase customer claims roughly 100 times and spoke with many representatives who repeatedly assured him "pre-advice" had been given. (Pl.'s Evidentiary App'x, Ex. A (Pl. Dep. at 59:7 – 60:21).)  Yet several months later, when Plaintiff had not heard back from anyone regarding the investment, he corresponded with Busch who claimed he had no knowledge of Plaintiff's involvement in the transaction, and never received "pre-advice" from Defendant. (*Id.* at 53:17–54:15.) In 2013, Plaintiff filed a complaint against Defendant with the Consumer Financial Protection Bureau, and in response, a high ranking representative of the corporation sent him a letter informing him no "pre-advice" had been given as the payment did not require such a phone call be made. (Pl.'s Evidentiary App'x, Ex. D (JP Morgan Chase Response to Compl. filed by Pl. with Consumer Financial Protection Bureau, Dec. 9, 2013).)

On November 13, 2014, Plaintiff filed the present case against Defendant in San Diego Superior Court alleging claims for professional negligence, negligent misrepresentation, and two claims for fraud.  Defendant removed the case to this Court on December 19, 2014, on the ground of diversity jurisdiction.  Defendant filed a

---

[1] In his deposition testimony, Plaintiff emphasized his inability to connect with Busch prior to May 7:

> He [Busch] was the only person I was unable to get in contact with. I did try contacting him many times.  In fact, held off on the transaction entirely.  Otherwise, I would have executed on May 4.  But since I was not able to get ahold of him, I actually held off until someone was able to get ahold of him.  That is why I asked the bank to get ahold of him.

(Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 23:16–23).)

motion to dismiss the claims, which this Court granted in part and denied in part. The remaining claims in controversy are Plaintiff's claims for professional negligence, negligent misrepresentation, and one claim for fraud.

## II.

## DISCUSSION

Defendant moves for summary judgment, or in the alternative, for summary adjudication on all of Plaintiff's claims for relief. First, Defendant argues Plaintiff's professional negligence claim fails because Plaintiff did not designate an expert to testify as to the standard of care for bankers issuing wire transfers. (Mem. of P. & A. in Supp. of Mot. at 8–10.) Second, Defendant contends Plaintiff's negligent misrepresentation claim fails because the evidence only supports a theory of intentional misrepresentation. (*Id.* at 10–12.) Third, Defendant argues Plaintiff's claim for fraud fails as a matter of law because there is no adequate causal relationship between the alleged fraud and Plaintiff's damages. (*Id.* at 12–13.) Fourth, Defendant alleges that Plaintiff's request for punitive damages fails as a matter of law because Plaintiff has failed to provide evidence that any leader in the corporation participated in misconduct. (*Id.* at 13–14.) Fifth, Defendant argues the wire transfer form Plaintiff executed in connection with the transfer of his funds limits Defendant's liability to amounts "specifically required by Article 4A of the Uniform Commercial Code." (*Id.* at 14–15.) Defendant asserts Plaintiff's claims do not arise under the UCC, therefore Defendant is not liable for Plaintiff's alleged damages. (*Id.*)

## A.     Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require Plaintiff to go beyond pleadings, Plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.    Professional Negligence**

In the Complaint, Plaintiff alleges Defendant engaged in professional negligence by failing to comply with Plaintiff's instructions to "issue pre-advice" prior to executing the wire transfer. (Compl. at ¶¶ 19–26.)[2] In Defendant's memorandum in support of its motion for summary judgment, it asserts that Plaintiff's professional negligence claim fails as a matter of law because Plaintiff did not designate an expert who could define the appropriate standard of care for bankers performing wire transfers. (Mem. of P. & A. in Supp. of Mot. at 1, 8.) In response to the motion, Plaintiff argues expert testimony is not required in this case since Defendant's negligence speaks for itself, and

---

[2] In opposition to the present motion, Plaintiff alleges Defendant was negligent not for its failure to issue "pre-advice," but in its failure to follow Plaintiff's instructions prior to the wire transfer. (Mem. of P. & A. in Opp'n to Mot. at 5.) However, the instructions directly pertained to issuing "pre-advice" prior to executing the wire transfer. Thus, the conduct to be evaluated is still that of a banker issuing "pre-advice" prior to a wire transfer.

14cv2976

a layperson would be capable of determining as a matter of common knowledge that Defendant's actions fell below a reasonable standard of care. (Mem. of P. & A. in Opp'n to Mot. at 5.) The issue for the Court is whether the absence of expert testimony is fatal to the professional negligence claim.

Case law supports Defendant's position. Due to professionals' training and skills in a given field, they are required to act with ordinary prudence under the circumstances as measured by "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing . . . ." *Flowers v. Torrance Memorial Hosp. Med. Ctr.*, 8 Cal. 4th 992, 997–98 (1994) (citing Prosser & Keeton, Torts § 32 The Reasonable Person, at 187 (5th ed. 1984)). Accordingly, as a general rule, in order to establish the applicable standard of care in the industry against which a professional's conduct must be measured, professional negligence claims require expert testimony. *See Scott v. Rayhrer*, 185 Cal. App. 4th 1535, 1542–43 (2010) (citing *Flowers,* 8 Cal. 4th at 1001).

Plaintiff avers that with one exception, Defendant only cites cases involving medical malpractice claims to support its assertion that expert testimony is required in cases of professional negligence, and implies that the case at bar involving bank protocol for wire transactions is different. (Mem. of P. & A. in Opp'n to Mot. at 3–4.) However, Plaintiff neglects to address Defendant's use of a second non-medical malpractice case to support its argument. *See U.S. Fidelity & Guaranty Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1138–39 (9th Cir. 2011) (discussing how claims against insurance brokers are subject to the professional negligence standard and thereby require expert testimony to define the standard of care in the industry). Furthermore, and despite Plaintiff's contention, case law does not limit the expert testimony requirement to only those professional negligence claims that concern medical malpractice. On the contrary, the general rule has been applied within a variety of professional contexts. *See id; Allied Props. v. John A. Blume & Assocs.*, 25 Cal. App. 3d 848, 857–58 (1972) (agreeing with the lower court's instruction to the jury that

they could only consider the standard of care in the engineering industry based on expert testimony, and discussing a lack of foundation for plaintiff's insinuation on appeal that such instruction should only apply to medical malpractice cases).

In a further attempt to avoid summary judgment on this claim, Plaintiff argues Defendant was negligent under *res ipsa loquitur* and accordingly, no expert testimony is required to define the standard of care. (Mem. of P. & A. in Opp'n to Mot. at 4–5.) An exception to the general rule requiring expert testimony exits where the conduct at issue in a case is "'within the common knowledge of the layman.' [Citations.]" *Flowers*, 8 Cal. 4th at 1001 (citing *Landeros v. Flood*, 17 Cal. 3d 399, 410 (1976)). This "common knowledge" exception encompasses cases where a "plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.'" *Id.* (citing *Engelking v. Carlson*, 13 Cal. 2d 216, 221 (1939)).

Here, however, Plaintiff did not allege *res ipsa loquitur* in his Complaint. Rather, Plaintiff introduced this argument for the first time in opposition to Defendant's motion for summary judgment. The Ninth Circuit has held "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, 'the district court should . . . construe[] [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time.'" *Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994).

Rule 15(b)(1) of the Federal Rules of Civil Procedure instructs that "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). When a court permits a plaintiff to argue theories not introduced in the complaint nor made known to defendant prior to the close of discovery, the defendant will not be on notice that it

must defend against such theories and will thus be prejudiced.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (affirming district court's decision to forbid plaintiffs, who brought suit under the Age Discrimination in Employment Act initially alleging disparate treatment, from alleging disparate impact considering their complaint did not put defendants on notice that they would have to defend against this theory and plaintiffs first introduced the argument at the summary judgment stage). Accordingly, Plaintiff can only proceed on his *res ipsa loquitur* theory if he meets the standard such that he could amend his Complaint without prejudicing Defendant.

At this stage, Plaintiff cannot, and has not, met that standard.  Plaintiff first introduced *res ipsa loquitur* in opposing summary judgment, and the record reveals Plaintiff did not put Defendant on notice that he intended to pursue this theory prior to the close of fact discovery (December 9, 2015) or expert discovery (March 30, 2016). (*See* Am. Case Management Conference Order Regulating Disc. and Other Pretrial Proceedings, Sept. 15, 2015.)  In fact, a *res ipsa loquitur* theory directly contradicts the allegations in Plaintiff's Complaint.  (*See* Compl. at ¶ 20) ("CHASE employees are trained and readily familiar in the facilitation of wire transfers and as such possess a *heightened understanding of these transactions than that possessed by a regular person*. As such, CHASE owed Plaintiff a reasonable standard of care equal to that of similarly situated banking professionals.") (emphasis added).  Because Defendant was not put on notice that it would have to defend against *res ipsa loquitur*, and would thereby be prejudiced if that theory were permitted at this stage of the case,  Plaintiff cannot proceed on this theory.

Even if Plaintiff's *res ipsa loquitur* theory was properly before the Court, it would not fit the facts of this case.  *Res ipsa loquitur* applies to "certain kinds of accidents [that] are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself.'" *Brown v. Poway Unified School District*, 4 Cal. 4th 820, 825 (1993).  In support of his argument that *res ipsa loquitur* should apply, Plaintiff cites cases that clearly satisfy this standard, wherein a professional's

negligence was apparent simply upon viewing the direct damage it caused the plaintiff. (*See* Mem. of P. & A. in Opp'n to Mot. at 5) (citing cases involving a sponge left inside a patient after surgery, a patient burned by an x-ray machine, a patient burned through application of a heating apparatus, and a patient suffering an infection by an unsterilized needle.)  In the present case, however, Defendant's alleged negligence is not apparent simply by reference to Plaintiff's alleged damage.  Whereas common sense dictates that a surgical sponge must be removed from a patient's body after an operation, common sense does not inform whether "pre-advice" must be provided by a banker upon issuing a wire transfer and what such "pre-advice" would entail.  In other words, although a sponge left in a patient may indicate that a doctor was negligent, Plaintiff's loss in this case is not "so likely to have been caused by Defendant's negligence that one may fairly say 'the thing speaks for itself.'"  *Brown*, 4 Cal. 4th at 825.  Accordingly, *res ipsa loquitur* would not be appropriate in this case, even if it were properly before the Court.

Since a bank's execution of wire transfers is not a matter of common experience such that the "common knowledge" exception should apply, expert testimony is required to establish the standard of care in this case.  Because Plaintiff failed to designate an expert, he cannot prevail on his claim for professional negligence. Accordingly, the Court grants Defendant's motion for summary adjudication of Plaintiff's professional negligence claim.

**C.    Negligent Misrepresentation**

In his negligent misrepresentation claim, Plaintiff contends that Defendant's representatives informed him "pre-advice" had been "issued" when in fact that was not true. (Compl. at ¶¶ 28–30; Mem. of P. & A. in Opp'n to Mot. at 7.)  Defendant argues this claim is inconsistent with Plaintiff's fraud claim, as different states of mind are required to satisfy each and Plaintiff's evidence only proves his theory of intentional, not negligent, misrepresentation.  (Mem. of P. & A. in Supp. of Mot. at 10–12.)

/ / /

Negligent misrepresentation and fraud are both torts of deceit as defined by California Civil Code §1710, which provides in pertinent part, "[a] deceit . . . is either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true . . . ." Cal. Civ. Code § 1710.  In California, negligent misrepresentation requires, "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) (citing *Ragland v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182, 196 (2012)).  Negligent misrepresentation and fraud contain similar elements, but they are nonetheless distinct torts since unlike fraud, negligent misrepresentation does not require that the defendant had actual intent to deceive.  *See Intrieri v. Superior Court*, 117 Cal. App. 4th 72, 86 (2004).  The issue here is whether Plaintiff has evidence to allow both of these theories to go to a jury.

Defendant argues Plaintiff does not have any such evidence.  (*See* Mem. of P. & A. in Supp. of Mot. at 11–12.)  In support of this argument, Defendant relies on Plaintiff's deposition testimony, in which he stated that Fava answered "yes" when Plaintiff asked if "pre-advice" had been given, and alleges that Fava clearly had reasonable grounds to know whether his statement was accurate and thus the second element of a negligent misrepresentation claim is not satisfied.  (*See* Def.'s Evidentiary App'x, Ex. A (Pl. Dep. at 183:6–25); Mem. of P. & A. in Supp. of Mot. at 11–12.)  However, Defendant fails to address Plaintiff's allegations about the conduct of other representatives after May 7, specifically misrepresentations they made to Plaintiff that "pre-advice" had been issued.  (Compl. at ¶¶ 29–30) ( "From 2012-2013 Plaintiff spoke on several additional occasions with CHASE representatives regarding the May 8, 2012 wire transfer.  On every occasion in which the matter was addressed, CHASE representatives represented to Plaintiff that proper pre-advice had been issued in

connection to this transaction.")[3]  There exists a material question of fact as to whether these representatives had reasonable grounds to believe their statements to be true. Accordingly, the Court denies Defendant's motion for summary judgment and summary adjudication of the negligent misrepresentation claim.

**D.     Fraud**

Plaintiff's claim for fraud rests on the same facts underlying his negligent misrepresentation claim: Defendant's statements to Plaintiff that "pre-advice" was given when it was not.  Defendant argues it is entitled to summary judgment on this claim because Plaintiff has failed to demonstrate a complete causal relationship between the alleged fraud and his damages.  Specifically, Defendant asserts that regardless of whether Fava had spoken with Busch, Busch would have forwarded Plaintiff's funds to Briscoe and Plaintiff would have been defrauded of $150,000.  (Mem. of P. & A. in Supp. of Mot. at 12–13.)  Defendant supports its argument by referencing the record, which reveals Plaintiff's identification information was apparent on the forms received by Busch, and drawing the inference that Busch acted well-knowing the funds originated from Plaintiff.  (*See* Def.'s Evidentiary App'x, Ex. B (Chase "Wire Transfer Outgoing Request" for $150,000 executed by Pl.); Ex. C (Bank of America Records for Westbridge Mutual LLC, April–May 2012).)  In Plaintiff's response, he argues the scam may not have occurred had "pre-advice" been given, and the trier of fact should decide whether speaking with a Chase representative would have upset Busch's plausible deniability defense by preventing him from denying knowledge of Plaintiff's involvement in the transaction.  (Mem. of P. & A. in Opp'n to Mot. at 9–10.)  Plaintiff further contends that Defendant neglected to address an additional aspect of his Complaint, which is that the scam would not have occurred but for Fava's misrepresentation because Plaintiff would not have allowed the transfer to proceed had

---

[3]  The Court notes there is a discrepancy in dates, as Plaintiff requested the wire transfer on May 7, 2012, but the transfer became effective on May 8, 2012.  (Def.'s Evidentiary App'x, Ex. B (Chase "Wire Transfer Outgoing Request" for $150,000 executed by Pl., May 7, 2012).)

1  he known Fava had not contacted Busch.  (*Id.*)  The issue for the Court is whether there

2  exists a material question of fact on the causation element of Plaintiff's claim.

3      A plaintiff who brings a claim for fraudulent misrepresentation bears the burden

4  of proving that the defendant caused the plaintiff's harm.  *OCM Principal Opportunities*

5  *Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 870 (2007).  Specifically,

6  "a causal link must exist between the fact misrepresented and the losses which

7  resulted."  *Id.* at 872 (2007).  In general, it must be established that the harm suffered

8  by a plaintiff was to be expected given a defendant's alleged misconduct.  *See Pacific*

9  *Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013).

10  Because members of a jury are presumed to be equally as capable as an individual judge

11  in making such a determination, "[c]ausation is an intensely factual question that should

12  typically be resolved by a jury."  *Id.*

13      Plaintiff correctly points out that Defendant did not meet its burden for summary

14  judgment or adjudication of this issue, as it failed to address one causational aspect of

15  Plaintiff's claim: that Plaintiff would not have permitted the wire transfer to proceed but

16  for Fava's misrepresentation that "pre-advice" had been issued.  Since Plaintiff claims

17  he only agreed to sign the wire transfer outgoing request form after believing Fava and

18  Busch had engaged in telephonic communication regarding the transaction, a triable

19  question of fact remains whether Plaintiff would have been defrauded of his $150,000

20  had Fava not represented to him that he issued "pre-advice."  Since Defendant has failed

21  to show there is no issue of material fact with respect to this argument, the Court

22  declines to address the merits of Defendant's allegation that even if "pre-advice" had

23  been given, Busch still would have forwarded Plaintiff's funds to Briscoe.

24  Accordingly, the issue cannot be conclusively resolved as a matter of law and

25  Defendant's motion for summary judgment and adjudication of the fraud claim is

26  denied.

27  / / /

28  **E.    Punitive Damages**

In order for a plaintiff to recover punitive damages against a corporate defendant in California, there must be "proof of malice among the corporate leaders: the 'officer[s], director[s], or managing agent[s].'" *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (quoting Cal. Civ. Code, § 3294, subd. (b)).  Because Plaintiff has conceded that this case does not involve the conduct of Defendant's leaders, the matter is not in dispute.  (Mem. of P. & A. in Opp'n to Mot. at 10.)  Accordingly, Defendant's motion for summary adjudication of Plaintiff's request for punitive damages is granted.

### F.     Article 4A of the Uniform Commercial Code

Defendant also seeks summary adjudication of Plaintiff's request for other damages based on the wire transfer outgoing request form signed by Plaintiff, which stated "The Bank will not be liable to you for any amount other than as specifically required by Article 4A of the Uniform Commercial Code."  (Def.'s Evidentiary App'x, Ex. B (Chase "Wire Transfer Outgoing Request" for $150,000).)   In light of this language and Plaintiff's failure to bring any claims under Article 4A, Defendant argues damages cannot be awarded as a matter of law.  (Mem. of P. & A. in Supp. of Mot. at 14–15.) Defendant also claims that since Plaintiff's Complaint post-dates the expiration of Article 4A's one-year statute of repose, his claims are barred.  (*Id.*)  Plaintiff responds that this language should not apply because he would not have signed the form in the first place but for the misrepresentation made to him that "pre-advice" had been issued.  (Mem. of P. & A. in Opp'n to Mot. at 12.)

Defendant's argument overreaches.  It appears to presume that a single sentence restricting Defendant's liability to amounts required by the UCC, and embedded within a paragraph of terms and conditions governing funds transfers, can be applied indiscriminately to all legal claims which may be brought by a customer who signs the form.  Defendant fails to explain why this alleged limitation on its liability should extend to the tort claims at issue in this case, especially because the alleged misconduct involves actions taken by Defendant's employees prior to and after the wire transfer. Defendant has not satisfied its burden of showing that potential damages arising out of

this conduct are barred as a matter of law.  Accordingly, the Court denies Defendant's motion for summary judgment on this issue.

## II.

## CONCLUSION

For these reasons, the Court denies Defendant's  motion for summary judgment and grants in part and denies in part Defendant's motion for summary adjudication of claims and issues.  Specifically, the Court grants Defendant's motion for summary adjudication of Plaintiff's professional negligence claim and request for punitive damages.  The Court denies the motion in all other respects.

**IT IS SO ORDERED**.

DATED: June 27, 2016

_____
HON. DANA M. SABRAW
United States District Judge